The Chief Justice delivered the opinion of the court.
The first reason assigned for setting aside the recording of the return of the road in question, is, that it was not shewn to the Court of Common Pleas, that the notices or advertisements of the application for the appointment of surveyors had been set up at three of the most public places in the township where the road was proposed to be laid out.
It is a sufficient answer to this reason, that the Court of Common Pleas have, as required by the statute, adjudged the advertisements in question to have been set up agreeably to law; and that, in the words of the statute, the *108] judgment of that court on this point *is final and conclusive. We are not at liberty to call into examination the correctness of the determination of the court. The subject was clearly within their jurisdiction ; and the legislature obviously designed to prevent, as they had a right to do, if they thought proper, a review here. Otherwise the terms of the statute are without meaning, force or effect.
The second peason is, that the return made by the surveyors is vague and uncertain. It is insisted to be so, first, because the several courses of the road set forth in the return' are said to be as the magnetic needle of the compass of Leonard Walling, the practical surveyor engaged in laying out the road, pointed on the 17th and 18th of August, 1824, the days on which they were run out. In this mode of expression we see nothing of uncertainty. It is no more than a designation of the instrument by which the observations of the courses was made. It is admitted that it would have been correct for the surveyors to have said, we run hi. 35° 43' E. Can it then be uncertain to *137 •say, what is really the fact, and what is always understood, though not always expressed, as the needle pointed which was used by us ? The remark made by the counsel of the defendant in certiorari is just. It really adds to the certainty of the return. Let us suppose it to he requisite some twenty years lienee, to ascertain the exact location of these courses when the monuments mentioned may be gone. What variation shall the surveyor allow ? What allowance shall he make for the known difference of instruments ? His answers to those questions must be conjectural, as these returns are commonly drawn. But in the present case, he will resort to some line in the neighborhood known also to have been run by the compass of Leonard Walling, and his .answers will then approach, if not attain, to certainty. Second. The return was said to be uncertain, because the route had been run on a subsequent day by James H. Newell and James Bobinson, deputy surveyors, with their compasses, who agreed in their observations, and found a small difference, of course, on the first line, which, followed out through the courses of a road of several miles, found at the termination a departure of about four chains. By the depositions of Leonard Walling, and of Thomas Debow, another surveyor, it appears they also, at a subsequent day, again run out the road, each with his own compass. They agreed, and found the original survey, as they believed, entirely correct. Who then can say the courses *con- [*109 tained in the return are incorrect? Is it shewn that the instruments of Nowell and Bobinson were more sure and perfect than those of Walling and Debow? Or that the former were more skillful and experienced artists than the latter? The difference between them is a very few minutes, and is nothing more than the variance common among instruments, and very common among surveyors. If a return is to be set aside because an instrument and surveyor, not shewn to be in the slightest degree superior, nay, not even shewn to be equal, in accuracy and skill, to the original instrument *138 and surveyor, differ somewhat in the survey, is it not manifest that the act for laying out roads is repealed without the will or intervention of the legislature ?
The third reason is, that the surveyors met on the 17th August, 1824, at the house of John Oasler, in Freehold, that the return is dated and signed on the 21st of the same month, at the house of AYilliam Johnson, in Mount Pleasant, and that no adjournment of time or place is shewn in the return. The case of the Monmouth and Middlesex road, decided in this court, and reported in 1 South. 290, is in point on this head, and we need do no more,. therefore, than refer to it. In that case the surveyors met on the 23d day of September, 1818, at the house of John Oasler, in Freehold, and the return is dated and signed on the 26th day of the same month, at Or'anbury. The objection was overruled and the return sustained. The report of the case does not mention the difference of place, but we have examined the original papers from the files of the clerk’s office.
In the fourth place, it is alleged that the freeholders appointed by the court to review the road, did not perform their duty. A recurrence to the facts at once dispels, this objection. The freeholders were directed to view the road as laid out by the'surveyors; and they required Mr. Newell to run the road from monument to monument, as mentioned in the return. AYhere else were they to go to find it ? certainly not on the route he proposed to have shewn to them.
It is said in the fifth place, the recording of the return ought to be quashed, because, since the suing out of the writ of certiorari, it was agreed between the prosecutors of the writ and certain of the applicants for the road, that the proceedings here should be suspended, until another road, in some parts different, but substantially the same, should *110] be applied for by the'prosecutors, and if obtained, *as has been done, the road now in question should by consent be set aside. It may well be doubted whether this court would be warranted in setting aside a road after it had been *139 established and recorded, and thus become, as it were, the property of the public, upon the consent or confession of errors of some of the original applicants. They cease to have, alone, the control over it after it is recorded. Another mode of vacating a public road is pointed out by the road act. However this matter may be, it is clear we cannot coerce the applicants to come in and confess error, nor can we reverse the proceedings unless sufficient error is confessed or shewn. The case of The State v. Woodward, decided at the last term, was cited by the counsel of the prosecutors. But it bears no analogy to the present circumstances. Wo there decided that in the just exercise of the legal discretion confided to this court, a certiorari in a matter of road ought not to be granted to a person whose avowed cause of complaint was an alleged variance of the route laid from the route originally proposed, which had been induced ac his request and by his urgency.
Let the recording of the return be affirmed.